JACOB STRAUSS ET AL., APPELLEES, V. MONITOR SPECIALTY COMPANY ET AL.; M. J. RAMAEKERS, APPELLANT.

FILED APRIL 24, 1911. No. 16,396.

1. **Notes:** REFORMATION: PLEADING. Petition examined and set out in the opinion *held* sufficient to sustain a judgment reforming the promissory notes in suit.

2. ———: ———: EVIDENCE. Evidence examined and set out in the opinion *held* clearly sufficient to sustain the allegations of the petition, and the judgment.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*A. M. Post* and *C. N. McElfresh,* for appellant.

*Crane & Boucher* and *A. E. Henly, contra.*

FAWCETT, J.

The petition alleges substantially: That the defendant the Monitor Specialty Company is a Nebraska corporation; that on February 18, 1908, said defendant was adjudged a bankrupt, and defendant Abel V. Shotwell was appointed trustee in bankruptcy of its estate; that during all of the times mentioned in the petition defendant D. G. Walker was the president and defendant M. J. Ramaekers the secretary and treasurer of the corporation; that on November 14, 1907, the defendant corporation made and executed three promissory notes, one for $300 due on or before December 14 after date, one for $300 due on or before December 24 after date, and the third for $202.90 due on or before January 14 after date. These notes were all alike in form, payable to the order of "ourselves," and signed "The Monitor Specialty Co., by D. G. Walker, President, by M. J. Ramaekers, Sec'y & Treas." Each note was indorsed upon the back as follows: "D. G. Walker. M. J. Ramaekers." That after the notes were so signed and indorsed "all of said defendants for a valuable consideration delivered said notes to these plaintiffs." That at the time of the execution and delivery of the notes "it was the intention of the defendants to execute to these plaintiffs valid and enforceable promissory notes aggregating said sum of $802.90, but that at said time said defendant the Monitor Specialty Company failed to indorse said notes, by reason of which failure to indorse said notes these plaintiffs are unable to enforce same against said defendants, and will be unable to enforce same unless this court shall require said defendant the Monitor Specialty Company to indorse same. * * * That at the time of the execution and delivery of said promissory notes, as herein set forth, it was agreed and understood that said notes should be indorsed by the defendant the Monitor Specialty Company, but that through inadvertence and mistake said defendant the Monitor Specialty Company failed and omitted to indorse said notes, and said defend-

15

ant the Monitor Specialty Company has failed and refused, and still fails and refuses, to indorse said notes, though often requested by these plaintiffs so to do, and said defendants the Monitor Specialty Company, D. G. Walker, and M. J. Ramaekers claim and contend that, by reason of the failure and omission of said the Monitor Specialty Company to indorse said notes, same are of no force or effect and create no liability against the said mentioned defendants." That when the notes became due they were duly presented to the defendant corporation for payment, but were not paid, whereupon said notes were duly protested for nonpayment, "of all of which said D. G. Walker and M. J. Ramaekers had due notice," the cost of said protest, $9.30, being paid by plaintiffs. That plaintiffs are the owners and holders of same, and that there is now due and owing to the plaintiffs thereon the sum of $802.90, together with interest and the further sum of $9.30 protest.

The prayer of the petition is that the defendants the Monitor Specialty Company and D. G. Walker, as president, and M. J. Ramaekers, as secretary and treasurer, and Abel V. Shotwell, as trustee in bankruptcy, be required forthwith to indorse said notes in the name of the Monitor Specialty Company as of the date of November 14, 1907, by writing across the back of said note the name of said "The Monitor Specialty Co., by D. G. Walker, President, by M. J. Ramaekers, Secretary and Treasurer, and by Abel V. Shotwell, Trustee in Bankruptcy of the estate of said The Monitor Specialty Co.;" and that plaintiffs recover judgment against the defendants the Monitor Specialty Company, D. G. Walker, and M. J. Ramaekers for the amount of said notes and interest.

The answer admits the corporate capacity of defendant the Monitor Specialty Company; that defendant Shotwell is trustee in bankruptcy of the estate of said bankrupt; that defendant the Monitor Specialty Company is indebted to plaintiffs "in the sum of about $800, but on open account, less certain dividends paid thereon," and denies

each and every other allegation in the petition. Further answering, defendants allege that the petition does not state facts sufficient to constitute a cause of action, and that several causes of action are improperly joined. There was a trial to the court, which resulted in a decree of reformation and judgment upon the notes as prayed in plaintiffs' petition. Defendant Ramaekers alone appeals.

At the opening of the trial defendant objected to the introduction of any evidence on the part of plaintiffs, "for the reason that the petition filed by said plaintiff does not state facts sufficient to constitute a cause of action; and for the reason that several causes of action in said petition are improperly joined." This objection was overruled, which ruling is now assigned as error. The objection that several causes of action were improperly joined is not discussed in the briefs. It will therefore be treated as abandoned and the objection to the sufficiency of the petition alone considered. The defendant contends that, in order to obtain the reformation of a written instrument, the right to such reformation must be established by evidence which is "clear, convincing, satisfactory, specific, and free from reasonable controversy; and that complainant was free from negligence," and that, if that degree of proof is required, the petition, upon which the action is based, should allege the facts with equal clearness and certainty. We think defendant has stated the rule a little more strongly than it has ever been applied in this court; yet we concede that his contention is substantially correct. Our understanding, however, of the clearness and certainty of allegation and proof necessary to sustain a suit for reformation of a written instrument is that it must be sufficient to satisfy the mind that the contract as written is not the contract intended by the parties, and that the error or deficiency therein is the result of a mutual mistake of law or fact on the part of the parties to such contract. Does this petition meet that requirement? Let us see. It alleges that at the time of the execution and delivery of the notes in controversy "it was the intention of

the defendants to execute to these plaintiffs valid and enforceable promissory notes aggregating said sum of $802.90." It is contended by defendant that this allegation is insufficient. The petition had already alleged the giving, indorsing and delivery of the notes in suit and had set them out in full. The effect, therefore, of the allegation just quoted is that it was the intention of the defendants in executing these notes to execute valid and enforceable notes; and the allegation complained of is immediately followed by a statement of the fact which rendered them unenforceable. We are unable to concur in defendant's contention.

The petition further alleges that at the time of the execution and delivery of the notes "it was agreed and understood that said notes should be indorsed by the defendant the Monitor Specialty Company, but that through inadvertence and mistake said defendant the Monitor Specialty Company failed and omitted to indorse said notes." If it was the agreement that the notes which were made payable to "ourselves" were to be indorsed by the maker, the Monitor Specialty Company, that agreement, if carried out, would have made the notes "valid and enforceable." They were not so indorsed, the petition alleges, "through inadvertence and mistake." We think this allegation was sufficient. We therefore hold that the petition stated a cause of action.

The next point urged is that the decree and judgment of the court are against the weight of evidence, and that the court erred in overruling defendant's motion, upon plaintiffs' rest, for a dismissal of the action and in entering judgment for plaintiffs. The evidence shows that at the time the notes were drawn President Walker and Secretary Ramaekers resided at Lindsay, Nebraska, which place appears to have been the home office of the defendant corporation. The company at that time maintained an office in Omaha, of which one Charles E. Charnquist was the manager. On the day the notes were written, one A. K. Cardoza, a representative of plaintiffs, called upon Mr.

Charnquist in his office in Omaha in relation to the settlement of the account then due from defendant corporation to plaintiffs. Mr. Cardoza died prior to the trial of this case, and plaintiffs were compelled to rely upon Mr. Charnquist for testimony as to what occurred at the time the notes were drawn. At the time of testifying, Mr. Charnquist was not in the employ of the defendant corporation. His testimony is to the effect that when Mr. Cardoza called he demanded payment of plaintiffs' account, and eventually suggested "that the company give him notes in payment of the account, consequently those notes were given." The notes were written out by Mr. Charnquist. When it came to the naming of the payee in the notes, he asked Cardoza "who he wanted the notes payable to." Cardoza answered: Make them payable to "ourselves." Mr. Charnquist says he then turned around and looked at Cardoza, and said: "Why not make the notes payable to you or the Strauss Brothers Company direct, and he began to get sort of angry, and said that his father had instructed him from early childhood to draw up all his checks and papers payable to myself or ourselves, and emphasized very strongly more than once that his father had been supreme judge for a good many years in the state of New York, and insisted that I make the notes payable to 'ourselves,' and have them signed by the president and secretary of the Monitor Specialty Company and indorsed by them individually or by D. G. Walker and M. J. Ramaekers." He further testified: "I made the remark to him that the notes would not be good to him or anybody else, notes that were made payable to ourselves and signed by them, and indorsed by M. J. Ramaekers and D. G. Walker individually, but he became very uneasy and got up and paced the floor, and insisted that they should be made that way, and insisted that I immediately write out the blanks and also write a letter and send up there, which I did. I done just as he told me to." It is now insisted that this testimony shows that the deficiency in the notes is due to the action of Car-

doza; that the notes were drawn as he demanded, and hence plaintiffs are not now entitled to have them reformed. It is argued that Mr. Charnquist had been a banker and knew that notes drawn as these were would not be good, but Mr. Charnquist further testified that nothing was said between him and Cardoza about these notes being indorsed by the Monitor Specialty Company. It is apparent therefore that the only discussion between Cardoza and Charnquist about the validity of the paper was in reference to the face of the notes. So far as the validity of the face of the notes is concerned, Cardoza was right and Charnquist, notwithstanding his prior banking experience, was wrong. The notes were properly drawn upon their face. The fact that upon their face they were made payable to "ourselves" did not render them invalid or in any manner unenforceable. The fact that, in order to complete the making of the notes, it was required that they be indorsed by the maker upon the back was not discussed by Cardoza and Charnquist, and hence what they said about the form of the notes has no bearing upon the right of plaintiffs to a reformation. When the notes were finally drawn, as insisted upon by Cardoza, they were sent by Charnquist to the home office at Lindsay for execution by the president and secretary, who alone had authority to execute them. When they received the notes, it was their duty to execute them, not merely to sign them upon the face, as that would not be a complete execution of the instruments. It was their duty not only to sign them upon their face, but to indorse them upon the back. This they failed to do, either through ignorance of the law, through inadvertence, or as a fraud upon the plaintiffs. In the absence of evidence, we will not impute fraud to these gentlemen. The law in such a case will presume that they did not intend to defraud, but intended to execute to plaintiffs valid promissory notes for an indebtedness which was then due, and in and by which notes the company would obtain an extension of that indebtedness for periods ranging from 30 to 60 days; and the law will

indulge a like presumption of honesty as to the indorsers, Walker and Ramaekers, viz., that, when they personally indorsed the notes, they intended to indorse and thought they were indorsing valid promissory notes for a valuable consideration, viz., the extension of time for the payment of the indebtedness of the company for which they were respectively president and secretary. Defendants have not seen fit to offer any explanation of the transaction in question. President Walker, it would seem, recognizes the justice of the decree of the district court, in that he has not appealed therefrom either individually or for the corporation. Mr. Charnquist further testified: "Q. State whether or not these notes which you have identified as exhibits 2, 4 and 6 were intended to take the place of the indebtedness of the Monitor Specialty Company to Strauss Brothers Company on the books of the company, and were to be considered as in settlement of that indebtedness? A. Why, as far as I know, that was the intention." The thought cannot be entertained for a moment that any of the parties intended to substitute unenforceable notes for an undisputed account.

The testimony of Thomas D. Crane is to the effect that he is one of the attorneys for plaintiffs; that on December 24, 1907, his firm received the notes in question from plaintiffs; that within two or three days thereafter he called upon Mr. Charnquist in relation to them; that he had a number of conversations with Mr. Charnquist, and that he, Charnquist, never in any of those conversations said anything about the alleged invalidity of the notes; that, when requested to make payment, he said that they were getting ready to send out statements to their customers, and that along about January 10 their remittances would be coming in, "and that these notes would be settled as soon as possible thereafter." Upon one occasion Charnquist called at the witness's office, when the matter was again discussed, and he was told by Mr. Crane that plaintiffs were urging them to bring suit unless the notes were paid, and that he also referred to

other claims his firm had in their hands which would
have to be sued if not paid promptly; that Charnquist
gave him two checks, one for $100 and one for $50, telling
witness that he could apply these sums on any of the
claims he wanted to; that the witness told him that he
would apply them on the two claims his firm had had
the longest, but that he would expect him to make the
next payment on the Strauss Brothers notes, "and he
said he would get around to it and do so." The wit-
ness also testified that his firm had received two small
dividends upon plaintiffs' claim from the trustee in
bankruptcy; that no objections whatever were made in
the bankruptcy proceedings by the trustee or the Moni-
tor Specialty Company or anybody else that these notes
were incomplete and insufficient; that on November 24,
1907, he had a conversation with President D. G. Walker,
at Lindsay, Nebraska; that in that conversation Dr.
Walker said to him, "Yes; we will sign that note; we
want to treat Robbins & Prokesch (whose claim Mr.
Crane was then representing) in the same way we have
treated the other creditors, and we will give our note to
secure the claim of Robbins & Prokesch the same as we
have Strauss Brothers and other creditors;" that the
Robbins & Prokesch note was signed the next day, when,
he says, "I tried to get him to have some of the other
stockholders in the Monitor Specialty Company sign with
him to secure the indebtedness due to our clients, Rob-
bins & Prokesch, but he said that all of the stockholders
in the Monitor Specialty Company had recently executed
a note for $5,000 which they had intended to negotiate
and raise the money to pay off their indebtedness, and
he mentioned the indebtedness of Robbins & Prokesch,
Strauss Brothers Company, and the Enger-Kress Pocket-
book Company, but he said the panic came on, and he
said the very day of the panic he came to Omaha or sent
down to Omaha this $5,000 note, and that the First Na-
tional Bank of Omaha had agreed to advance the money
on it, but the panic coming on stopped it. He said, if it

hadn't been for the panic, Robbins & Prokesch, Strauss
Brothers and Enger-Kress would all have been paid."
When asked if he had ever had any conversation with Mr.
Ramaekers about the notes, he answered: "When the note
was signed on the morning of November 25, 1907, Dr.
Walker stated to Mr. Rameakers that this note was
given to secure the merchandise indebtedness due to
Robbins & Prokesch, the same as the other notes had been
given."

It will thus be seen that from the time these notes were
signed and delivered to plaintiffs the defendants and
Charnquist all treated them as valid in all respects, and
never once intimated that they entertained any thought of
their invalidity. It was not until counsel for plaintiffs
brought suit upon the notes in the county court that this
claim was made. It would seem that defendants inter-
posed a demurrer in that court. Mr. Crane testified that
the defendants' attorney informed his partner, in the
presence of the witness, the grounds of his demurrer, stat-
ing that it was because the notes were informal and made
payable to the order of "ourselves" and not indorsed by
the Monitor Specialty Company, that thereupon counsel
dismissed the action in the county court without prejudice
and commenced the present suit.

To our minds the proof meets every condition insisted
upon by defendants. We think it established beyond
reasonable doubt that at the time these notes were signed
and delivered defendants thought they were giving, and
plaintiffs thought they were receiving, valid notes for the
indebtedness due from defendants to plaintiffs, and that
the failure upon the part of defendant corporation to in-
dorse the notes was the result of either inadvertence or
mistake. In the face of this record, it would be a travesty
upon justice to permit defendant Ramaekers to escape
his just liability upon these notes, which could only be
done upon the theory that he, the secretary and treasurer
of defendant company, when he indorsed the notes in-
dividually and sent them to plaintiffs, knew that the notes

were invalid, and that he, as an officer of the company, was thereby perpetrating a fraud upon plaintiffs.

The judgment of the district court is right, and it is

AFFIRMED.